Hope BRIDGE, Stephen D. Schwarz, Eileen Carson on their behalf and on behalf of all other similarly situated individuals, Plaintiffs,

v.

INVEST AMERICA, INC., Charles E. O'Hara, IV, Bernard Dohrmann, Enersave, Ltd., Richard N. Toas, Ringen Financial Corporation, Gary C. Ringen, James R. Maloy, Richard Caito and Jeffrey Lynn Pickett, Defendants.

Civ. A. No. 89–0642 L.

United States District Court,
D. Rhode Island.

Oct. 26, 1990.

Alden Harrington, Boyajian, Harrington & Richardson, Providence, R.I., for plaintiffs.

Wm. Walsh, Moretti & Perlow, Cranston, R.I., for Caito.

Jason Monsack, Kirshenbaum & Kirshenbaum, Cranston, R.I., for Ringen Financial.

Bernard Dohrmann, Madison, Ala., pro se.

James Maloy, Altamonte Springs, Fla., pro se.

Charles O'Hara, Providence, R.I., pro se.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is before the Court on the motion of defendants Gary C. Ringen ("Ringen") and Ringen Financial Corporation ("RFC") to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[1] Plaintiffs contend that this Court has personal jurisdiction over Ringen because service of process was authorized by section 1965(b) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1965(b). Alternatively, plaintiffs argue that jurisdiction exists because service of process was proper under the Rhode Island long-arm statute. R.I.Gen.Laws § 9–5–33.

This Court concludes that plaintiffs' effort to secure in personam jurisdiction over Ringen in this forum under section 1965(b) of RICO is misplaced. Analysis of jurisdiction under section 1965(b) is only required when venue in the forum is proper as to at least one defendant, but challenged as improper with regard to another. However, this Court concludes that it does have in personam jurisdiction over Ringen on the basis of the nationwide service of process provision found in section 1965(d) of RICO. This exercise of jurisdiction is constitutionally proper even though Ringen's activities do not subject him to service of process under the Rhode Island long-arm statute.

## BACKGROUND

This dispute arises out of losses suffered by plaintiffs from an allegedly fraudulent investment scheme organized and operated by defendants. The investment program centered around the purchase and lease-back of residential solar hot water heating systems. Plaintiffs are investors who each purchased at least one heating system for $3,975.00. Each did so on the understanding that the heating system would be installed and leased to consumers in Nevada. After receiving a few monthly "lease payment" checks, plaintiffs were informed that their investment money had been lost.

There are several named defendants allegedly involved in this program. Invest America, Inc. ("Invest America") is a Delaware corporation that allegedly participated in the development, promotion, and marketing of the solar investment program. Enersave, Inc. ("Enersave") is a Texas corporation that was allegedly represented to be the seller of the solar heating units. Bernard Dohrmann ("Dohrmann") is a California resident who allegedly was a controlling shareholder, an officer, and a director of Invest America. Richard N. Toas ("Toas") is a Texas resident who allegedly was a controlling shareholder, employee, officer, and director of Enersave.[2] James R. Maloy ("Maloy") was a Rhode Island resident during this time and was the manager of the Rhode Island office of Invest America. Charles E. O'Hara, IV ("O'Hara") and Richard Caito ("Caito") were authorized Invest America salesmen in Rhode Island. Jeffrey Lynn Pickett ("Pickett") is a California resident who was allegedly the principal figure behind two defunct corporations involved in manufacturing, selling, leasing, and servicing solar hot water heating equipment.

Ringen is a California resident and a shareholder, director, employee, and officer of RFC, a California corporation. The extent of Ringen's involvement in this dispute

---

1. RFC joined in Ringen's 12(b)(2) motion and in so doing reiterated, confirmed and fully adopted Ringen's arguments. It is undisputed that this Court's jurisdiction over RFC is completely dependent on its ability to hale Ringen into this forum. Therefore, unless otherwise indicated, references to Ringen apply equally to RFC.

2. Plaintiffs have failed to locate and serve defendants Toas and Enersave.

is clear: he wrote one letter. It is the characterization of that letter that is in issue. Plaintiffs claim that the letter, written on RFC letterhead, is a "due diligence letter" prepared and delivered to Dohrmann, Invest America, and Pickett. Plaintiffs allege that the letter was prominently included in the sales materials provided to every plaintiff/investor at the time each contemplated the investment. Further, plaintiffs allege that the letter contains misrepresentations. Ringen characterizes the letter as "nothing more than a *personal* letter written at the request of defendant Dohrmann outlining the *personal* impressions that Ringen had following a brief trip to look into Pickett's [pre-Invest America] operations." Ringen strongly denies ever performing a "due diligence" investigation on any project, including the solar heating program at issue here.

## DISCUSSION

Plaintiffs allege that this Court has personal jurisdiction over Ringen on two independent grounds. First, they assert jurisdiction exists under the service of process provision found in section 1965(b) of RICO. Second, they assert jurisdiction exists under the Rhode Island long-arm statute. Because plaintiffs are attempting to invoke this Court's personal jurisdiction over Ringen, they have the burden of establishing the existence of jurisdiction. 2A J. Moore, J. Lucas & G. Grother, *Moore's Federal Practice* ¶ 12.07 (2d ed. 1990).

This Court must accept the allegations in plaintiffs' complaint as true, *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1014 (1st Cir.), *cert. denied*, 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988), and in its discretion has decided to consider extra-pleading material in ruling on the motion. *Thompson Trading Ltd. v. Allied Lyons PLC*, 123 F.R.D. 417 (D.R.I.1989).

### RICO

Plaintiffs first argue that this Court has personal jurisdiction over Ringen because section 1965 of RICO authorizes nationwide service of process. Indeed, " 'service of process is the vehicle by which the court may obtain jurisdiction.' " *Driver v. Helms*, 577 F.2d 147, 155 (1st Cir.1978)

(quoting *Aro Mfg. Co. v. Automobile Body Research Corp.*, 352 F.2d 400, 402 (1st Cir.1965)), *rev'd on other grounds sub nom. Stafford v. Briggs*, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980). The Federal Rules of Civil Procedure set out the requirements of service of process for civil actions in the United States district courts. Generally, service is confined to the "territorial limits of the state in which the district court is held." Fed.R.Civ.P. 4(f). However, the Rules also accommodate Congress's power to authorize service in a different manner. *See Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947, 950 (1st Cir.1984). Thus, service beyond a state's territorial limits is permitted "when authorized by a statute of the United States." Fed.R.Civ.P. 4(e).

The dispute here revolves around whether service was authorized by the RICO statute. Both plaintiffs and Ringen focus their attention on the following language in section 1965(b):

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that *the ends of justice require* that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof. (emphasis added).

Plaintiffs contend that the "ends of justice" require this Court to exercise personal jurisdiction over Ringen; Ringen contends that the "ends of justice" do not require such a result.

Completely ignored in the arguments of the parties is the statutory language in subsection (d) of section 1965 that actually controls the outcome here. Section 1965(d) states:

> All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

It is section 1965(d) not section 1965(b) that has been construed to be the general nationwide service of process provision in RICO. *See Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 709 F.Supp. 1279, 1285 (S.D.N.Y.1989); *Accord United States v. International Bhd. of Teamsters,* 708 F.Supp. 1388, 1402 (S.D.N.Y.1989); *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040, 1055 (S.D.N.Y.1987); *McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.,* 644 F.Supp. 580, 585 (E.D.Mich. 1986); *Hirt v. UM Leasing Corp.,* 614 F.Supp. 1066, 1069 (D.Neb.1985); *Soltex Polymer Corp. v. Fortex Indus., Inc.,* 590 F.Supp. 1453, 1458 (E.D.N.Y.1984); *Clement v. Pehar,* 575 F.Supp. 436, 438 (N.D.Ga. 1983).

Section 1965(b) has been consistently construed to be "applicable *only* in a case in which there is venue for the RICO claim for at least one defendant in the forum but not as to others and there is no other district which would have venue of all defendants named in the RICO count." *Abeloff v. Barth,* 119 F.R.D. 315, 329 (D.Mass. 1988) (emphasis added). Thus section 1965(b) is a special venue provision, supplementing the basic RICO venue provision found in subsection (a) of section 1965 [3], as well as any other applicable venue provision. As stated by one court, "section 1965(b) effectively operates as a waiver of the applicable venue requirements if the 'ends of justice' so require." *Anchor Glass Container Corp. v. Stand Energy Corp.,* 711 F.Supp. 325, 330 (S.D.Miss. 1989). *Accord United States v. Bonanno Organized Crime Family of La Cosa Nostra,* 695 F.Supp. 1426, 1431 (E.D.N.Y.1988); *Goldwater v. Alston & Bird,* 664 F.Supp.

403, 408 (S.D.Ill.1986); *Miller Brewing Co. v. Landau,* 616 F.Supp. 1285, 1290 (E.D. Wis.1985); *Bernstein v. IDT Corp.,* 582 F.Supp. 1079, 1087–88 (D.Del.1984); *Farmers Bank v. Bell Mortgage Corp.,* 577 F.Supp. 34, 35 (D.Del.1978).

Section 1965(b) does contain a provision for nationwide service of process, and thus authorizes personal jurisdiction as well as venue. *See Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 671 (7th Cir.1987) (reaffirming the principle that nationwide service of process is constitutionally permissible in federal question cases in federal courts where the defendant has contacts with the United States), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 700 (1988). However, the section 1965(b) service of process provision is only calculated to ensure that a district court will have personal jurisdiction over any defendant brought before it via the authority granted by the special venue provision.[4] Without a concurrent expansion of personal jurisdiction, Congress's expansion of venue in section 1965(b) would be meaningless. *See Driver,* 577 F.2d at 156 (construing service of process language in 28 U.S.C. § 1391(e)). This construction furthers the goal of section 1965(b), which is to ensure "that at least one court will have jurisdiction over everyone connected with any RICO enterprise." *Lisak,* 834 F.2d at 672.

Ringen bases his argument that this Court must reach an "ends of justice" determination before it exercises personal jurisdiction over him on the authority of *Butcher's Union Local No. 498 v. SDC Investment, Inc.,* 788 F.2d 535 (9th Cir. 1986). The plaintiffs in *Butcher's Union* were four labor unions and one union member. They brought a civil RICO action in

---

**3.** Section 1965(a) states: "Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."

**4.** Section 1965(b) does not, however, mandate the existence of venue merely because personal jurisdiction is attainable. For example, in the *Lisak* case, the Seventh Circuit ruled that although an Illinois district court would have personal jurisdiction over a Florida resident

pursuant to the nationwide service of process provision, that court probably would not have venue. *Lisak,* 834 F.2d at 672. The facts in *Lisak* made venue inapplicable under 28 U.S.C. § 1348, and doubtful under section 1965(a). The Seventh Circuit stated that even if venue existed under section 1965(a) with respect to two defendants, the ends of justice may not require other defendants to appear when it was obvious that an Indiana district court would have jurisdiction over everybody.

the Eastern District of California against eighteen defendants including four employers, an officer/manager of each, several attorneys, and agents of the National Maritime Union ("NMU"). The plaintiffs contended that the defendants formed a nationwide conspiracy to "bust" their unions and recognize the "sham" NMU on four different occasions. They also alleged the four employers formed the basis for four distinct conspiracies involving the attorneys and the NMU agents.

The Ninth Circuit affirmed the District Court's grant of two nonresident defendant employer's motions to dismiss for lack of personal jurisdiction.[5] The District Court determined that the plaintiffs' complaint "failed to allege a nationwide pattern of racketeering activity" in which all eighteen defendants were participants. *Id.* at 538. The District Court did conclude, however, that the complaint alleged four distinct conspiracies. It used section 1965(b) to exert jurisdiction over the nonresident attorneys and NMU agents involved in one alleged conspiracy with a defendant employer based in California. However, the Court refused to subject the two nonresident defendant employers to its jurisdiction because no member of their alleged conspiracies was properly before it.

The plaintiffs in the *Butcher's Union* case argued that the District Court had personal jurisdiction over those two defendants solely on the basis of section 1965(b). They argued that the ends of justice required nationwide service of process "because they had alleged a nationwide conspiracy that could only be challenged in one suit in which all defendants were present." *Id.* at 537–38. The Ninth Circuit struck down this attempt to invoke section 1965(b) as the basis for ascertaining personal jurisdiction: "merely naming persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s nationwide service provisions." *Id.* at 539.

Notable in the Ninth Circuit's opinion is the importance attached to the plaintiffs' narrow argument for the District Court's exercise of personal jurisdiction. The plaintiffs' sole argument was that jurisdiction existed over the two nonresident defendant employers under section 1965(b). "[Plaintiffs] did not suggest any other means by which the court might obtain personal jurisdiction over the nonresident defendant employers." *Id.* at 538. "The [district] court did not consider any other possible bases for personal jurisdiction...." *Id.* "Neither [plaintiffs'] original nor their amended complaint ... mentions the possibility of establishing personal jurisdiction under anything other than section 1965(b)." *Id.* at 540. "[Plaintiffs] relied entirely on section 1965(b)." *Id.* "[Plaintiffs] failed to notify the [district] court that they were seeking to establish the court's personal jurisdiction under anything other than section 1965(b)." *Id.* at 541.

In the case at bar, plaintiffs also invoke section 1965(b) as the source of this Court's personal jurisdiction. However, a district court is empowered to make an independent determination of its power to exercise personal jurisdiction. *See Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1215 (6th Cir.1989) (noting the judicial "concern that the door to a federal courtroom not be slammed in the face of a plaintiff seeking to invoke its powers where there is, in fact, no defect in personal jurisdiction"). After reviewing the statutory language and the line of supporting cases, this Court concludes that section 1965(d) authorizes personal jurisdiction over Ringen, without regard to an "ends of justice" determination under section 1965(b). The District Court for the Southern District of New York came to the same conclusion in *Rolls–Royce Motors, Inc.:*

Defendants, citing no case law, claim that nationwide service of process is only authorized under RICO if a judicial determination is made that the 'ends of justice' so require. Defendants have misconstrued the statute, by confusing personal jurisdiction with venue. The language upon which defendants rely is

---

5. A third nonresident defendant employer was no longer in the case at the time of the appeal to the Ninth Circuit. *Butcher's Union,* 788 F.2d at 537.

found in § 1965(b). This subsection comes into play if a court determines that venue is proper as to one or more defendants in a RICO case pursuant to § 1965(a), but not as to other defendant(s). In that case, a court can assert venue as to the remaining defendant(s) if 'justice so requires.' At this juncture, this Court is limiting its inquiry to a determination of whether personal jurisdiction is proper.

*Rolls–Royce Motors, Inc.,* 657 F.Supp. at 1055–56 n. 10 (citations omitted).

Here, Ringen has cited caselaw to support his position; the *Butcher's Union* decision. However, because the *Butcher's Union* plaintiffs failed to allege jurisdiction existed under section 1965(d) and insisted jurisdiction existed under section 1965(b), the decision is inapplicable. The *Butcher's Union* District Court did exercise personal jurisdiction over several nonresident defendants pursuant to section 1965(b) in connection with the California conspiracy in which jurisdiction existed over one resident defendant employer. The District Court refused, however, to exercise jurisdiction over the two nonresident defendant employers because for "nationwide service of process to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy." *Butcher's Union,* 788 F.2d at 539. The District Court concluded that with respect to the alleged conspiracies involving the two nonresident defendant employers, no defendant was subject to the court's jurisdiction, making utilization of section 1965(b) impossible.

This Court will engage in a section 1965(b) "ends of justice" determination only upon an allegation that venue in the forum is improper as to some defendants. The forum must also be the proper venue for at least one defendant and there must not be any other district which would have venue over all the defendants. *Abeloff,* 119 F.R.D. at 329. Only then will it be necessary to inquire whether justice requires improperly venued defendants to be brought before the Court. Section 1965(b) allows both proper venue and the exercise of personal jurisdiction over such defendants.

■ Ringen has not challenged the appropriateness of venue in this matter. *Contra Farmer's Bank,* 577 F.Supp. at 34. Ringen's failure to raise a timely objection to venue has resulted in the waiver of that defense. *See generally* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1391 (1990) ("[A]ny time defendant makes a pre-answer Rule 12 motion, he must include, on penalty of waiver, the defenses set forth in subdivisions (2) through (5) of Rule 12(b)."). Furthermore, this Court is unable to raise a venue objection on its own motion. *See Sinwell v. Shapp,* 536 F.2d 15, 19 (3d Cir.1976) (stating that it is generally "inappropriate for the trial court to dispose of the case sua sponte on an objection to the complaint that would be waived if not raised by the defendant[s] in a timely manner").

■ Even if a venue challenge had been lodged, jurisdiction here over Ringen would still be proper. All the plaintiffs are residents of Rhode Island, all the investments occurred in that state, defendant Invest America's agents, defendants Maloy, O'Hara, and Caito, were residents of Rhode Island, and defendant Dohrmann assisted in Rhode Island sales. Only Ringen and RFC have not dealt directly in Rhode Island. It is conceded by both parties that the only contact Ringen and RFC have with Rhode Island is that copies of Ringen's letter ended up in the promotional material provided to each plaintiff in Rhode Island.

The ends of justice certainly would require this Court to exercise personal jurisdiction over Ringen in accordance with the special venue provision given the desirability of having the entire action litigated in one court. *See Farmer's Bank,* 577 F.Supp. at 35 (denying a motion to dismiss for lack of venue because the "ends of justice" of section 1965(b) required nonresident defendant's presence in the court.) *See also Butcher's Union,* 788 F.2d at 538 (noting the district court's power under section 1965(b) to bring several nonresident defendants into the forum with respect to

the alleged conspiracy that existed in California).

*Rhode Island Long–Arm Statute*

Plaintiffs also argue that this Court has in personam jurisdiction over Ringen because service of process was authorized by the Rhode Island long-arm statute.[6] This Court has visited this area of the law on numerous occasions. *See McAleer v. Smith*, 715 F.Supp. 1153 (D.R.I.1989); *Russo v. Sea World of Florida, Inc.*, 709 F.Supp. 39 (D.R.I.1989); *Donatelli v. National Hockey League*, 708 F.Supp. 31 (D.R.I.1989), *rev'd*, 893 F.2d 459 (1st Cir. 1990); *Wood v. Angel*, 707 F.Supp. 81 (D.R.I.1989); *American Sail Training Ass'n v. Litchfield*, 705 F.Supp. 75 (D.R.I.1989); *Thompson Trading Ltd. v. Allied Lyons PLC*, 123 F.R.D. 417 (D.R.I.1989); *Levinger v. Matthew Stuart & Co., Inc.*, 676 F.Supp. 437 (D.R.I.1988); *Petroleum Services Holdings, Inc. v. Mobil Exploration and Producing Services, Inc.*, 680 F.Supp. 492, 494 (D.R.I.1988), *aff'd*, 887 F.2d 259 (1st Cir.1989); *Dupont Tire Service Center, Inc. v. North Stonington Auto–Truck Plaza, Inc.*, 659 F.Supp. 861 (D.R.I.1987).

A determination of whether service on Ringen complied with the statute begins with the following two-part inquiry: "First, are the requirements of the long-arm statute of the state in which the district court is located satisfied? Second, do the requirements of the state long-arm statute comport with the strictures of the due process clause of the Fourteenth Amendment?" *American Sail Training Ass'n*, 705 F.Supp. at 78.

Because the Rhode Island long-arm statute reaches to the fullest extent of the Fourteenth Amendment, *Conn v. ITT Aetna Finance Co.*, 105 R.I. 397, 402, 252 A.2d 184, 186 (1969), it is necessary only to examine whether service on Ringen complied with constitutional limitations. *See Russo*, 709 F.Supp. at 41. The basic due process standard is the requirement that a non-resident defendant have "certain minimum contacts" with a forum before being subject to a court's in personam jurisdiction. *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

Further United States Supreme Court guidance in determining the limits of due process was summarized in the *Petroleum Services Holdings* opinion. 680 F.Supp. at 495. That decision referred to a three part test used to determine the constitutionality of exercising jurisdiction pursuant to a long-arm statute.

"First, one must determine whether the jurisdiction is general or specific." *Petroleum Services Holdings*, 680 F.Supp. at 495. Specific jurisdiction exists when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). General jurisdiction exists when the defendant has such "continuous and systematic" contacts with the forum state that he is subject to suit there on any matter. *Id.* at 415, 104 S.Ct. at 1872.

Second, "depending on the type of jurisdiction that is exercised, one must examine the nature of the defendant's contacts with the forum state." *Petroleum Services Holdings*, 680 F.Supp. at 495. Specifically, if specific jurisdiction is employed, it is proper to characterize the contact as either contractual or tortious. If the contact is contractual in nature, there must be evidence that the defendant "purposefully availed" himself of the benefits and protections of the forum state's laws. See *Thompson Trading Ltd.*, 123 F.R.D. at 426. If the contact is tortious in nature, then there must be evidence of a "causal link between the forum contact and the allegedly tortious act." *McAleer*, 715 F.Supp. at 1157.

---

**6.** Rule 4(e) of the Federal Rules of Civil Procedure states in part: "Whenever a statute or rule of court of the state in which the district court is held provides ... for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state ... service may ... be made under the circumstances and in the manner prescribed in the statute or rule."

Finally, "if the specific jurisdiction of the court is invoked in accordance with the due process clause, one must still inquire whether it is unreasonable for the Court to exercise personal jurisdiction over the defendant." [7] *Petroleum Services Holdings,* 680 F.Supp. at 495.

■ In this case, it is clear that general jurisdiction does not exist over Ringen. His one contact with this state, the existence here of his photocopied letter does not constitute the requisite "continuous and systematic" contacts needed for the exercise of general jurisdiction. *See Helicopteros,* 466 U.S. at 415, 104 S.Ct. at 1872; *Russo,* 709 F.Supp. at 42; *Donatelli,* 708 F.Supp. at 35; *Wood,* 707 F.Supp. at 84.

If jurisdiction is to be found, it must be on the basis of specific jurisdiction. The primary characteristic of specific jurisdiction is that the lawsuit must arise from or relate to Ringen's contact with the forum. The question then is whether this lawsuit, involving federal RICO claims and state law fraud claims, arises from or relates to the existence of Ringen's letter in the sales material provided to plaintiffs. Before this question may be answered, the nature of Ringen's contact with the forum state must be established.

It is difficult to classify Ringen's contact with this state as being either contractual or tortious in nature. Plaintiffs' claims revolve around several alleged misrepresentations made as part of the sales program. *See McAleer,* 715 F.Supp. at 1157 (suggesting that the nature of the plaintiffs' underlying cause of action is helpful in classifying the nature of the defendant's contacts with the forum state). Such allegations are contractual in nature because the misrepresentations concern a contractual agreement involving the plaintiffs and several defendants to buy an investment. *See id.* at 1158. Ringen's letter is alleged to contain several misrepresentations.

■ Although his letter undoubtedly has had contact with Rhode Island residents, there is no showing Ringen himself has had contacts with Rhode Island. At best, Ringen's letter is the product of an agreement between Ringen and Invest America that was not negotiated, not accepted, and not performed in Rhode Island. *See American Sail Training Ass'n,* 705 F.Supp. at 79. Ringen simply has not been shown to have purposefully availed himself of the privileges, benefits, and protections of Rhode Island law. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985). In short, this Court concludes that Ringen lacked "fair warning" that his letter would subject him to the jurisdiction of Rhode Island. *See id.* at 472, 105 S.Ct. at 2181–82.

In addition, plaintiffs have not alleged that Ringen's failure to control distribution of his letter was tortious in any manner. It is undisputed that a single alleged tortious act by a nonresident defendant can subject that defendant to specific jurisdiction when direct effects in the relevant state are "clearly forseeable." *Thompson Trading, Ltd.,* 123 F.R.D. at 428. Here, however, there is no allegation Ringen performed any tortious activity. There is no showing of any contact of Ringen himself with this forum that is "sufficiently direct and related" to plaintiffs' injuries. *Russo,* 709 F.Supp. at 42.

Although Ringen's letter did indeed wind up in the hands of Rhode Island residents, the exercise of in personam jurisdiction by this Court over Ringen on the basis of the Rhode Island long-arm statute would be unconstitutional. Jurisdiction depends on an allegation that the defendant has specific contacts with the forum, not that the mails or wires have caused his signed letter to be forwarded to residents of the forum state. See *Helicopteros,* 466 U.S. at 417, 104 S.Ct. at 1873 ("[The] unilateral activity of another party or third person is not an appropriate consideration when determining whether a defendant" has minimum contacts with the forum state.).

This suit does arise out of or relate to the existence of Ringen's letter in the material provided to residents of the forum state.

---

7. Because the Court determines that the exercise of specific jurisdiction in the instant matter would be unconstitutional, no analysis of reasonableness is undertaken here.

However, the exercise of specific jurisdiction would be constitutionally impermissible because Ringen himself lacks sufficient minimum contacts with Rhode Island.

Plaintiff also argues that jurisdiction could exist under the instant long-arm statute under the reasoning of *Violet v. Picillo*, 613 F.Supp. 1563 (D.R.I.1985) and *O'Neil v. Picillo*, 682 F.Supp. 706 (D.R.I. 1988), *aff'd*, 883 F.2d 176 (1st Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990). In those cases, jurisdiction was found to exist over several nonresident generators of hazardous waste because of their failure to ascertain the disposal location used by independent disposal services. Plaintiffs allege the instant matter is analogous because Ringen failed to exercise proper control of his "due diligence" letter in the heavily regulated securities industry, just as the *Picillo* generators failed to properly control their waste in the heavily regulated environmental waste industry.

Plaintiffs' attempted analogy fails of its own construction. The investment program at issue here was not part of the heavily regulated securities industry. In fact, affidavits supplied by defendant show that the Rhode Island Department of Business Regulation considered the program to be a business opportunity, not a security. Plaintiffs have failed to show that the type of jurisdiction recognized in *Picillo* should be extended to the current dispute.

### CONCLUSION

The motion to dismiss for want of in personam jurisdiction of defendants Ringen and RFC is hereby denied. Jurisdiction exists because of the nationwide service of process provision found in section 1965(d) of RICO, although it does not exist under the Rhode Island long-arm statute.

*It is so Ordered.*